IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID M. JOHNSON,<br><br>    Petitioner,<br><br>  v.<br><br>JAMES E. TILTON, Secretary, CDCR,<br><br>    Respondent.<br>                           / | No. C 08-4972 WHA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted based on the two claims set forth in the petition. Respondent has filed an answer and a memorandum of points and authorities in support of it. Petitioner has responded with a traverse. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

A jury in Sonoma County Superior Curt convicted petitioner of kidnaping, *see* Cal. Penal Code § 207(a); willful infliction of corporal injury on a spouse, *see id.* at §§ 273.5(a), (e)(1); assault with a deadly weapon, *see id.* at § 245(a)(1); and making criminal threats, *see id.* at § 422. The jury also found true the allegation that he had inflicted great bodily injury. *See id.* at § 12022.7(a). The trial court sentenced him on the kidnaping count to the upper term of eight years, plus three years for the enhancement, and also imposed the upper term on the

remaining counts, but stayed those terms.  The conviction was affirmed on direct appeal by the California Court of Appeal, but the sentence was vacated, and the case was remanded for sentencing pursuant to *Cunningham v. California*, 549 U.S. 270 (2007) (Resp. Exh. 8).  The state's petition for review by the California Supreme Court was granted, and the case was remanded back to the court of appeal for reconsideration (Resp. Exh. 13).  On remand, the court of appeal affirmed the conviction and sentence (Resp. Exh. 17).

The following summary of the evidence is taken from the first opinion of the California Court of Appeal.  *See People v. Johnson*, No. A113097, slip op. at 2-4 (Cal. Ct. App., April 13, 2007), *as modified* (Cal. Ct. App., May 14, 2007).

In a prior incident of domestic violence that occurred in October 2003, petitioner, during an argument with his wife, Ms. Doe, head-butted her, hit her, wrapped his arm around her neck and dragged her down the hall.  Her neck was particularly sensitive because she had degenerative disk disease, and had undergone two neck surgeries for it.  Petitioner repeatedly threatened to kill her.  Petitioner was convicted of misdemeanor willful infliction of corporal injury on a spouse for this incident, and served time in jail.  He returned to live with Ms. Doe and her daughter after he was released, but moved out in June 2005.

On August 19, 2005, petitioner called Ms. Doe, and asked her to meet him at a 7-Eleven store because he had divorce papers for her to sign.  She drove to the 7-Eleven, and after buying a few things, they returned to her car and she drove him to Spring Lake.  She put out a blanket by a picnic table and they talked about their relationship, which Ms. Doe felt had come to an end.  She asked about the divorce papers, and he said he did not have any.  He then became angry and started saying things in an angry and demeaning tone.  He was drinking beer and said he did not want to be there anymore, so they got in the car.  She was drove him towards home, but she obeyed his orders to turn around because she knew that when he gets angry "he'll hit."  She drove for awhile until they stopped at a store.  They both went in, but she did not try to flee because the last time she "went away or left [her] car" he damaged it.  He began to hit her as they drove around some more, calling her names and blaming her for his having been fired from his job.  She kept asking where he wanted to go, and he said, "Just keep driving, bitch."  She

2

1  also kept "explaining over and over it's not my fault." As she drove, he hit her repeatedly with
2  his fist on the right side of her face and ear. Some of the blows were so hard that they knocked
3  her head against the driver's side window.

4  Petitioner told her to park in a lot. When she did, she saw a friend, but petitioner
5  threatened to kill her if she tried to contact her friend. He told her to keep driving, hit her again
6  twice, held a knife to her ribs, and told her that the friend could not help her. She started
7  driving again. He told her that he would bury her in a remote construction area after killing her.
8  She kept telling him that she wanted to go home and asking him to let her, but "he said no."
9  She was afraid to pull over because "[e]verything seemed to cause him to hit me." When he
10 told her to drive up a dirt road to the construction site she refused, and he became infuriated.
11 She thought he was going to kill her, and he kept striking her in the face repeatedly "like
12 jack-hammering" and yelling that he was going to bury her. She became light-headed and her
13 ears were ringing. She asked him to let her stop driving, but he refused. He continued to hit her
14 and threaten to kill her. She asked him to let her talk to her daughter before he killed her.

15 They stopped again at a 7-Eleven, and she ran out to the phone to call her daughter. She
16 told her daughter she was coming home. Petitioner ran out and got to the phone, and she urged
17 him to talk to her daughter, hoping that would calm him down. Instead, he hit her with the
18 phone and hung it up. He ordered her to get back in the car, and he continued to hit her in the
19 head as she drove. At some point he ripped off the rear view mirror and used it to hit her over
20 her right eye. The mirror shattered, and she began to bleed. Eventually, she persuaded him to
21 let her go back to the house by promising to have sex with him. She did not want to bring him
22 home and have sex, but saw this as a way to get home and see her daughter. Once she made
23 this promise, it took less than an hour to drive back to her home.

24 When they pulled into the carport, she "ran like hell." Her daughter met her on the way
25 to her apartment, and called 911. After returning home from the hospital, where she was treated
26 for her injuries, Ms. Doe saw that the windshield of her car was bashed in and the tire sidewalls
27 had holes in them.
28 //
//

**ANALYSIS**

**A.    STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 09 (2000), while the second prong applies to decisions based on factual determinations, *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412 13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546 47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and

4

1 convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory
2 assertions will not do.  *Ibid*.

3 Under 28 U.S.C. ' 2254(d)(2), a state court decision "based on a factual determination
4 will not be overturned on factual grounds unless objectively unreasonable in light of the
5 evidence presented in the state court proceeding." *Miller El*, 537 U.S. at 340; *see also Torres v.*
6 *Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

7 When there is no reasoned opinion from the highest state court to consider the
8 petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*, 501
9 U.S. 797, 801 06 (1991).  The last reasoned state court decision on petitioner's jury instruction
10 claim is the decision by the California Court of Appeal dated April 13, 2007, and the last
11 reasoned state court decision on petitioner's sentencing claim is the decision by the California
12 Court of Appeal on October 22, 2007.

### B.   ISSUES PRESENTED

14 As grounds for federal habeas relief, petitioner asserts that: (1) his Sixth Amendment
15 right to jury trial was denied when a jury did not decide the facts leading to imposition of the
16 upper term at sentencing; and (2) his due process rights were violated by a faulty jury
17 instruction.

#### 1.   Right to Jury

19 Petitioner claims that the trial court violated his Sixth Amendment right to trial by jury
20 as set out in *Cunningham v. California*, 549 U.S. 270 (2007), by imposing upper terms on the
21 kidnaping and other counts.  The trial court imposed the upper terms after finding the following
22 aggravating factors: the attack was cruel based on petitioner's knowledge of his wife's physical
23 condition, the attack was particularly painful to her because of her condition, his prior
24 convictions, his prior prison term, and the unsatisfactory prior parole and probation terms
25 (Resp. Exh. 8 at 10; *see* Cal. Rule of Court 4.421(b) (listing factors to be considered in setting
26 aggravated, middle or mitigated term)).  The trial court found that these factors outweighed the
27 "possible" mitigating factors of intoxication and two prior probation terms that were completed
28 successfully (Resp. Ex. 8 at 10).

In *Apprendi*, the Supreme Court held that any fact that increases the penalty for a crime

5

beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 466. In *Blakely*, the Supreme Court explained that "the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303. This means that the "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." *Cunningham*, 549 U.S. at 293. In *Cunningham*, the Supreme Court, citing *Apprendi* and *Blakely*, held that California's Determinate Sentencing Law violates a defendant's right to a jury trial to the extent that it contravenes "*Apprendi's* bright-line rule: Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt.'" *Ibid.* (quoting *Apprendi*, 530 U.S. at 490).

There was no constitutional error in imposing the upper terms in this case. The exception to the general rule in *Apprendi* providing that the fact of a prior conviction need not be pleaded in an indictment or proved to a jury beyond a reasonable doubt, applies. *Butler*, 538 F.3d at 643 (citing *Apprendi*, 530 U.S. at 490 and *Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998)). The Ninth Circuit has recognized that "the Supreme Court has not overruled the *Almendarez-Torres* exception for prior convictions" and therefore the "obligation to apply the *Almendarez-Torres* exception [remains] unless and until it is rejected by the Supreme Court." *Butler*, 528 F.3d at 643-44. Here, petitioner was sentenced to the upper terms based on, among other things, his "numerous" prior convictions (Resp. Exh. 8 at 10). Under the exception set forth in *Almendarez-Torres* and *Apprendi* for aggravating factors based upon a prior conviction, the Sixth Amendment did not require that a jury find that petitioner suffered prior convictions, and the trial court could rely on its own finding of this aggravating circumstance in sentencing petitioner to the upper terms.

The fact that the trial court also found additional aggravating circumstances – such as the cruelty of the offense and the pain caused, petitioner's prior failures on parole and probation, and his prior prison term – does not alter this conclusion. "[U]nder California law, only one aggravating factor is necessary to set the upper term as the maximum sentence." *Butler*, 528 F.3d at 641. "[I]f at least one of the aggravating factors on which the judge relied in

6

1  sentencing [petitioner] was established in a manner consistent with the Sixth Amendment,
2  [petitioner's] sentence does not violate the Constitution." *Id.* at 643. Therefore, as it was
3  within the trial court's discretion to sentence petitioner to the upper terms based solely upon his
4  prior convictions, petitioner's sentence is constitutional irrespective of "[a]ny additional
5  factfinding" with respect to additional aggravating circumstances. *Ibid.* Because the trial court
6  relied upon at least one factor established in a manner consistent with the Sixth Amendment, the
7  sentence petitioner received did not violate his Sixth Amendment rights.

8  For these reasons, the state courts' rejection of this claim was not contrary to, or an
9  unreasonable application of, clearly established United States Supreme Court authority.

### 2. Jury Instruction

Petitioner claims that the instruction on the withdrawal of consent violated his right to due process. He argues that the instructions failed to inform the jury that petitioner had to know that the victim withdrew her consent in order for him to be guilty of kidnaping. At trial the defense argued that while the victim did not consent to being beaten, she was not kidnaped because she consented to drive petitioner around, and that even if she withdrew her consent during the drive, petitioner did not know that she had done so (Resp. Ex. 8 at 4).

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. See *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Ibid.* The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Ibid.* In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982).

In order to show a due process violation, a petitioner must show both that the instruction was ambiguous or erroneous and a "reasonable likelihood" that the jury applied the instruction in a way that violates the Constitution. *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009). A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that a due process violation

7

has occurred. *Calderon v. Coleman*, 525 U.S. 141, 146 (1998). If an error is found, a federal court also must determine that the error was prejudicial in that it had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The trial judge instructed the jury on the elements of kidnaping, as follows::

> 1. The defendant took, held, or detained another person by using force or by instilling reasonable fear; [¶] 2. Using that force or fear the defendant moved the other person or made the other person move a substantial distance; [¶] 3. The other person did not consent to the movement; [¶] AND [¶] (4) The defendant did not actually and reasonably believe that the other person consented to the movement.

(Resp. Ex. 8 at 5.) The instruction further explained consent:

> The defendant is not guilty of kidnapping if he reasonably and actually believed that the other person consented to the movement. The People have the burden of proving beyond a reasonable doubt that the defendant did not reasonably and actually believe that the other person consented to the movement. If the People have not met this burden, you must find the defendant not guilty of this crime.
>
> The defendant is not guilty of kidnapping if the other person consented to go with the defendant. The other person consented if she (1) freely and voluntarily agreed to go with or be moved by the defendant, (2) was aware of the movement, and (3) had sufficient maturity and understanding to choose to go with the defendant. The People have the burden of proving beyond a reasonable doubt that the other person did not consent to go with the defendant. If the People have not met this burden, you must find the defendant not guilty of this crime.

(*Ibid.*) The trial court also instructed the jury on the withdrawal of consent:

> Consent may be withdrawn. If, at first, a person agreed to go with the defendant, that consent ended if the person changed his or her mind and no longer freely and voluntarily agreed to go with or be moved by the defendant. The defendant is guilty of kidnapping if after the other person withdrew consent, the defendant committed the crime as I have defined it.

(*Ibid.*)

The California Court of Appeal found that when all of the instructions on kidnaping and the withdrawal of consent are read together, there is no reasonable likelihood that they would "be construed to permit conviction if the victim merely subjectively changed her mind, but the defendant had a good faith and reasonable belief that the victim continued to consent" (*Id.* at 7.) The appellate court explained its reasoning:

> The [kidnaping] instruction informed the jury that the prosecution must prove that the victim did not consent, and that defendant did not have a reasonable and good faith belief that the victim went with him voluntarily. Nothing in the portion of the instruction regarding withdrawal of consent suggested that a

8

> different rule applied when consent initially exists, and is later withdrawn. To the contrary, the instruction informs the jury that, if the victim's initial consent is withdrawn, the defendant is guilty of kidnapping only if the jury finds he thereafter "committed the crime *as I have defined it*." The italicized language clearly refers the jury back to the initial definition of kidnapping, including the direction that the jury must find not only that the victim did not consent, but also that the defendant did not have a reasonable and good faith belief that the victim went with defendant voluntarily. If the jury found the victim only subjectively changed her mind, but nothing she said or did objectively communicated that fact to the defendant, it could only conclude he had a reasonable and good faith belief in her continued consent.

(Resp. Exh. 8 at 7-8 (emphasis in original).) The California Court of Appeal's reasoning is persuasive. By referring the jury back to the kidnaping instruction, which explicitly required knowledge that the victim did not consent, it was clear from the instruction on withdrawing consent that the jury had to find petitioner knew that the victim had withdrawn consent in order to find him guilty of kidnaping. When the withdrawal of consent instruction is read in the context of the rest of the kidnaping instructions, there is no reasonable probability that the jury would have read the instruction in the way petitioner argues. Consequently, the instructions on the withdrawal of consent did not violate petitioner's right to due process.

Moreover, even if the instructions had been in error, it did not have a substantial and injurious effect on the verdict. *See Brecht*, 507 U.S. at 637. There was overwhelming evidence that after getting in the car with petitioner and he began beating and threatening her, the victim clearly communicated to him that she did not want to stay in the car with him. She testified to telling petitioner many times that she wanted to drive home and not continue to drive around. There was also evidence that he knew that she did not want to stay in the car with him because he threatened her with a knife in order to stop her from seeking help from her friend. She also ran to the phone to call her daughter at one of the stops, only returning to the car after he hit her on the head with the phone. Finally, the jury could reasonably find that petitioner would know that the victim would not want to stay in the car with a man who was beating and threatening to kill her. Based on this evidence, any jury would have very likely found that petitioner did not have a reasonable or good faith belief that the victim wanted to stay in the car with him. As a result, even if the instructions had erred by not making clear that such a finding was required, such an error did not have a substantial and injurious effect on the outcome of the case.

For these reasons, the state courts' rejection of this claim was not contrary to, or an

9

unreasonable application of, clearly established United States Supreme Court authority.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED.**

Dated: March   22  , 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.08\JOHNSON4972.RUL.wpd